# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **MARY QUESENBERRY, ET AL.** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09CV00022 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **VOLVO GROUP NORTH AMERICA, INC., f/k/a VOLVO TRUCKS NORTH AMERICA, INC., ET AL.,** | ) ) ) ) ) | By: James P. Jones<br>Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Julia Penny Clark and Kimberly Sánchez Ocasio, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Plaintiffs; Thomas J. Bender, Robert C. Drake, and Matthew J. Hank, Littler Mendelson, P.C., Philadelphia, Pennsylvania, for Defendants.*

This opinion sets forth more fully the reasons for my rulings made at trial on the defendants' objections to certain of the plaintiffs' witnesses and exhibits, on the grounds that the witnesses had not been disclosed in a timely fashion and the exhibits constituted inadmissible hearsay.

I

This class action, commenced on January 21, 2009, concerns a dispute over retired union workers' medical benefits. The plaintiffs are union workers who retired between 2000 and 2007 from New River Valley Assembly Plant in Dublin, Virginia

(the "NRV Plant"), their spouses, and the national and local divisions of the union that represented them — International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and UAW Local Union 2069. The NRV Plant has been owned and operated by one of the defendants, Volvo Group North America, Inc. ("Volvo"), formerly known as Volvo Trucks North America, Inc., since Volvo purchased the plant from White Motor Corporation in 1980.

The plaintiffs brought this class action against Volvo and the other defendant, Volvo Trucks North America Retiree Healthcare Benefit Plan, under the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West 2006), seeking a declaration that, under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (West 1998), the defendants cannot unilaterally reduce current retiree healthcare benefits provided for under certain collective bargaining agreements. The plaintiffs also sought a declaration that, under § 502(a)(1)(B) and (a)(3) of the Employment Retirement Income Security Act of 1974, 29 U.S.C.A. § 1132(a)(1)(B) and (a)(3) (West 2009), the defendants cannot unilaterally reduce current retiree healthcare benefits provided for the class representatives and those similarly situated.

In the scheduling order entered by Magistrate Judge Pamela Meade Sargent on May 19, 2009, fact discovery in this case closed as of September 30, 2009, summary judgment motions were due November 30, 2009, and trial was set for January 25,

2010. The court directed that, inter alia, witness and exhibit lists be submitted at least fourteen days prior to the pretrial conference, scheduled at that time for January 11, 2010.

The deadlines were extended as the dates grew closer. The parties mutually agreed to extend discovery beyond September 30, 2009 to October 23, 2009, in order to allow more depositions to be taken. On December 29, 2009, the trial was continued until March 22, 2010 at the request of both sides, moving the pretrial conference to March 9, 2010. On March 2, 2010, Magistrate Judge Sargent issued a Report and Recommendation denying both parties' motions for summary judgment as to liability. On March 18, 2010, I adopted her Report and Recommendation, and the trial was to proceed as scheduled.

On February 23, 2010, fourteen days before the pretrial conference, the plaintiffs filed their exhibit and witness lists for trial. The defendants then moved to strike twenty-nine of the forty-three witnesses on the plaintiffs' list, on the grounds that they were not properly disclosed by the plaintiffs earlier in discovery under Federal Rule of Civil Procedure 26. The defendants also moved to strike Exhibits 53, 54, 78, and 87 from the plaintiffs' exhibit list on the grounds that they were irrelevant and alternatively, constituted hearsay. The parties briefed and orally argued their

positions, and I issued an oral ruling on these motions at trial on March 22, 2010, based on the reasons set forth below.

II

The defendants moved to strike the following witnesses from plaintiffs' witness list because they were not disclosed in a timely manner under Federal Rule of Civil Procedure 26 (collectively, the "Challenged Witnesses"):

1. Mary Quesenberry
2. Paul Hollandsworth
3. Walter Viers
4. Robert Goad
5. Shirley Tolbert
6. Gertrude Akers
7. Marvin Akers
8. Greg Bartlett
9. Mary Bibb
10. Ronald Blair
11. Charles Duncan
12. Sylvia Goff
13. Burman Gale
14. Linda Grantham
15. Luther Henley
16. Jerry King
17. Douglas McFall
18. Barbara McFall
19. Walter McGrady
20. James Morehead
21. Armand Parah
22. Dana Pugh
23. Frank White
24. Peggy White
25. Elliott Anderson
26. John Grigsby
27. David Hirschland
28. Shelby Collins
29. Ralph Pratt

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires that a party must provide to its opponent, *without awaiting a discovery request,* the name of each individual likely to have discoverable information that the disclosing party may use to support its claims, unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). These initial disclosures must be made within fourteen days of the parties' first discovery planning conference. Fed. R. Civ. P. 26(a)(1)(C). In addition,

Rule 26(e)(1)(A) requires that a party *must supplement* or correct these initial disclosures *in a timely manner*, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

If a party fails to identify a person as required by Rules 26(a) or 26(e), that party is not permitted to call that person as a witness at trial unless such failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The basic purpose of this exclusionary rule is to prevent "surprise and prejudice to the opposing party." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). It is not necessary that the nondisclosure be in "bad faith or callous disregard of the discovery rules" for the evidence to be excluded. *Id.* The burden is on the nondisclosing party to show harmlessness or justification. *See id.* When assessing whether the nondisclosure was substantially justified or harmless, the court, in its broad discretion, should consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence*.*" *Id.* at 597.

For the reasons provided below, I found that the plaintiffs violated Rules 26(a)(1)(A)(i) and 26(e)(1)(A) by failing to disclose, in a timely manner, twenty-two of the Challenged Witnesses as persons who may have discoverable information. Applying the *Southern States* factors, I also found that for twenty of the twenty-two undisclosed witnesses, the nondisclosure was neither harmless nor substantially justified.

A

The first twenty-four of the Challenged Witnesses were NRV Plant retirees and their spouses. The first five — Mary Quesenberry, Paul Hollandsworth, Walter Viers, Robert Goad, and Shirley Tolbert — were also named plaintiffs. Because they were named as plaintiffs, these five individuals, though omitted from initial disclosures, did not have to be identified in supplemental disclosures. "As to material omissions [from initial disclosures], further disclosures are only necessary when the omitted or after-acquired information 'has not otherwise been made known to the other parties during the discovery process.'" 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (2010) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties." Fed. R. Civ. P. 26 advisory committee's note. The defendants were clearly aware of the identity of the class representatives

and that they were retirees who believed they had been promised lifetime benefits, and therefore these five individuals were permitted to testify at trial.[1]

It is a different story for the nineteen retirees and their spouses who, although class members, were not named as plaintiffs, but appeared on the plaintiffs' witness list. The plaintiffs may not have presumed that the defendants would be on notice that someone would have discoverable information merely because they were a class member. There were hundreds of class members in this case, and it would have been unreasonable to draw the conclusion that all of them may have had knowledge of relevant events. Therefore, the plaintiffs did have a duty to disclose in a timely manner, under Rule 26(a)(1) and(e)(1), which class members may have had discoverable information.

The plaintiffs did not disclose these nineteen individuals to defendants as persons likely to have discoverable information — they simply revealed them as witnesses on February 23, 2010.[2] The plaintiffs argued that these witnesses were

---

[1] In fact, however, the plaintiffs called only two of the class representatives as witnesses at trial — Walter Viers and Robert Goad.

[2] The plaintiffs claim that pursuant to Rule 26(e)(1), Armand Parah was "otherwise . . . made known" to the defendants as a union negotiator because his name appeared on collective bargaining agreements produced during discovery. However, this disclosure did not alert the defendants to the fact that Parah believed he was told in an individual meeting with Volvo representatives that he had lifetime health care benefits, as the plaintiffs asserted. Rule 26(1)(A)(i) requires that for each person disclosed as likely having discoverable information, "the subjects of that information" must also be disclosed. Fed. R. Civ. P.

revealed in a timely manner because their counsel did not begin to interview these class members until February 9, 2010 — over a year after the action in this case was filed — and they notified the defendants two weeks later of the witnesses' identities. However, an investigation into key witnesses is clearly part of fact discovery, which according to this court's earlier order, was to be completed by September 30, 2009. Although the parties agreed to extend the discovery deadline into October, that still did not justify beginning interviews of retirees in February, approximately four months later and nearly three months after the submission of summary judgment briefs.

The purpose of these interviews was to determine if the retirees were ever told by anyone at Volvo that they would have lifetime health benefits. Yet it was almost a year prior, on March 10, 2009, that Magistrate Judge Sargent put the plaintiffs on notice that they must demonstrate how retirees came to the understanding that they would receive lifetime benefits from Volvo. If plaintiffs truly did not have any time prior to February to complete the interviews of these class members, then they should have sought to extend the deadline for fact discovery.

---

26(1)(A)(i). Because Parah's involvement as a negotiator would not have revealed this information, he cannot be considered to have been "otherwise . . . made known."

It is not the case that the plaintiffs can claim they were previously unaware that these retirees existed or of how to obtain the identity of those retirees who claimed to have been told by Volvo that they had lifetime healthcare benefits. On February 10, 2009 — shortly after the case was filed — the plaintiffs submitted a declaration to this court signed by the local union's benefits representative, John Sayers, in which he stated that he knew of retirees who were told by Volvo representatives that their healthcare benefits had vested.

The plaintiffs argued that requiring the disclosure of these nineteen class members at anytime prior to February 23, 2010, would be tantamount to requiring that they disclose witnesses before the court-ordered date. This argument confuses two separate requirements under Rule 26. The witness list, indeed, was submitted to the defendants on the date set by the court for pretrial disclosures, in accord with Rule 26(a)(3). However, the plaintiffs still had an obligation to disclose these individuals as persons likely to have discoverable information under Rule 26(a)(1). Performance of one of these rules cannot be substituted for the other because they serve different purposes. The objective of Rule 26(a)(3) is to list, after all the information has been gathered and discovery is closed, the witnesses who will be called by a party at trial and allow the opposing party to properly prepare to examine those witness. The aim of Rule 26(a)(1), on the other hand, is to identify at the outset those persons that may

have any information relevant to the case in order to allow for a complete investigation by all parties, thus allowing parties to depose, interview, or subpoena documents of such individuals during the period of time set aside for discovery.

The plaintiffs' suggestion that they never had a duty to disclose these individuals before they were interviewed is incorrect. Although failure to disclose in a timely manner may be excused in some situations, e.g., if the conditions of *Southern States* are met, it is nonetheless a failure. They had a duty under Rule 26(a)(1) and (e)(1) to make and supplement initial disclosures in a timely manner, and twenty-eight days before trial, four months after the close of fact discovery, is not timely.

B

Challenged Witness number twenty-five, Elliott Anderson, was initially identified as a union official who negotiated retiree health benefits. But after the defendants had scheduled Anderson's deposition, the plaintiffs' counsel told the defense counsel that Anderson had "no particular recollection of negotiations over benefits," and that "[b]ased on [plaintiffs' counsel's] conversation with [Anderson], it would not be cost-effective to bring him to Detroit for a deposition." (DE 117, Exhibit D (plaintiffs' counsel's e-mail to defense counsel on October 9, 2009).) Defendants, cognizant of the numerous depositions they would be taking, cancelled

Anderson's deposition. Thus, much to their surprise, on February 23, 2010, the defendants found Anderson's name on the plaintiffs' witness list. Because the plaintiffs withdrew their initial notification of Anderson, causing defendants to cancel his deposition, they essentially corrected any previous disclosure to *not* include Anderson. Therefore, before putting him on their witness list, they would have had to again correct their disclosure and tell the defendants that it was possible that Anderson had relevant knowledge. Since they failed to do that, they did not properly adhere to the disclosure requirements of Rule 26.

C

Another two Challenged Witnesses, John Grigsby and David Hirschland, were not revealed to the defendants until the time summary judgment motions were filed on November 30, 2009, two months after the date fact discovery was closed, but this disclosure was nonetheless timely. John Grigsby (No. 26) was the Chief Financial Officer of White Motor Corporation when Volvo purchased the NRV Plant from White Motor, and David Hirschland (No. 27) is a former union negotiator. The plaintiffs were not aware that either Grigsby or Hirschland had potentially relevant knowledge of the issues in this case until November 24, 2009, six days before the motions for summary judgment were due. In fact, plaintiffs only first learned of Grigsby's existence in October 2009. It was after speaking to Grigsby on November

24, 2009, that they learned Hirschland might also have relevant information. Given that they notified defendants of these witnesses six days later, the plaintiffs' supplemental disclosure was timely in this instance.

D

The final two witnesses, Shelby Collins and Ralph Pratt, are union officials who were not identified as individuals who might have discoverable information until February 23, 2010. The plaintiffs only intended to call them to lay a foundation for two trial exhibits. These exhibits were notes the plaintiffs claim were taken by another union representative — who has since passed away — during negotiations with Volvo, and the plaintiffs averred that Collins and Pratt were familiar with the deceased's handwriting and would testify that the exhibits were in fact the deceased's notes.

The plaintiffs explain that they did not determine, until a few weeks before pretrial disclosures were due, which documents they would seek to admit at trial. It was only then, according to the plaintiffs, that they decided they would seek to admit these notes and realized they needed to have witnesses to identify the handwriting. Consequently, the plaintiffs promptly inquired among union members as to whether there was anyone who could identify the deceased's handwriting. On February 16, 2010, the plaintiffs learned that Collins and Pratt could identify the handwriting and

notified defendants on February 23, 2010, that they intended to call them as witnesses.

As discussed above, identifying persons with discoverable information four months after the close of fact discovery and less than a month before trial is not timely. In summary, the plaintiffs were required to show that the nondisclosure of Pratt, Collins, Anderson, and the nineteen retirees and spouses who were not named as plaintiffs was either harmless or substantially justified under the *Southern States* test, as I will now discuss.

E

1

Applying the five factors to the nondisclosure of Anderson, I found that plaintiffs' failure to identify him was not harmless or substantially justified. Indeed, Anderson's name on the witness list was a surprise to the defendants on February 23, 2010, and they would not have had time to cure the error by conducting a deposition. Since the instant motions were argued on the day trial was to begin, allowing Anderson to testify would mean either delaying the trial to allow the defendants to depose him if they wished or else permitting Anderson to testify without giving the defendants the opportunity to question him under oath beforehand. Given that this

trial was scheduled to last a week and took coordination of witnesses located across the country, rescheduling at the last hour would have been highly disruptive.

Moreover, it is unclear what the significance of Anderson's testimony would have been since even the plaintiffs seemed unable to articulate what he might say. The plaintiffs said they desired to call Anderson because they believed there was a possibility, if asked a specific question about the negotiations, Anderson might have his memory jogged and be able to recollect facts he previously could not. The plaintiffs offered no explanation as to why they now believed, although they previously told the defendants otherwise, that Anderson may have had a sudden recollection of the union's negotiations with Volvo over retiree health benefits if called to testify. Under these circumstances, the plaintiffs failed to overcome their burden under *Southern States*, and Anderson was barred from testifying at trial.

2

Similarly, the plaintiffs did not pass the *Southern States* test as applied to the retirees and spouses who were not previously disclosed. Until February 23, 2010, these nineteen individuals were never disclosed in any way to the defendants, leading to a definite surprise when they read the plaintiffs' witness list. Certainly, the defendants could not have had time to conduct nineteen depositions without delaying the trial, and rescheduling the trial, as discussed above, would have been highly

disruptive. It would also have been highly prejudicial to defendants to allow the testimony of nineteen individuals, none of whom the defendants had had the opportunity to depose.

The purported testimony would not be inconsequential, because the plaintiffs asserted that these individuals would testify that they were promised lifelong benefits by Volvo representatives during individual meetings at the time they retired. Yet, the plaintiffs had no satisfying justification for the undue delay in investigating the recollection of these class members, other than that they just did not get around to it earlier. This explanation, if accepted as substantial justification, could create a perverse incentive for parties to delay the interviews of key witnesses — by waiting to the last possible moment (just before pretrial witness disclosures are required) to interview individuals who likely have relevant information, parties could claim ignorance for purposes of Rule 26(a)(1) disclosures and surprise opponents with key witnesses at trial. Such an outcome goes against the fundamental purpose of discovery. Accordingly, the nineteen class members who were not named as plaintiffs were struck from the witness list and were not permitted to testify.

3

In contrast, Pratt and Collins were permitted to testify because their late identification was harmless. The surprise to the defendants, for one, is limited. The

plaintiffs called Pratt and Collins solely to identify handwritten notes. Also, the defendants knew of these handwritten documents during fact discovery because they were used as exhibits in a deposition. A thorough cross-examination, therefore, could still be conducted without a deposition, given the limited purpose of the testimony and the defendants' previous knowledge of the documents. Thus, permitting this testimony did not disrupt the trial.

On the other hand, I did find the plaintiffs' assertion that they did not know they were going to use the exhibits at trial unconvincing. The documents here were used as exhibits in a deposition and were very pertinent to the main factual questions of this case. Although the plaintiffs may not have formally made the decision to admit the notes at trial, it is hard to believe they were not reasonably certain during discovery that they would seek to admit the notes at trial. However, nondisclosure can be excused if substantially justified *or* harmless. Accordingly, although I did not find the delay substantially justified, I did find it harmless and permitted the testimony of Pratt and Collins at trial.

IV

The defendants also moved to strike four documents — Exhibits 53, 54, 78, and 87 — from the plaintiffs' exhibit list, claiming that the statements in these

documents were irrelevant under Federal Rule of Evidence 401 and contained hearsay statements, inadmissible under Federal Rule of Evidence 802. Assuming arguendo that the exhibits were relevant, I found that Exhibits 53, 54, 78, and 87 contained inadmissible hearsay.

Hearsay is an oral or written assertion offered into evidence through the testimony of someone other than the declarant to prove the truth of the matter asserted unless the assertion is an admission by a party-opponent or a prior statement by a witness under oath. Fed. R. Evid. 801(a), (c), (d). Hearsay is inadmissible unless the statement falls within one of the established exceptions. Fed. R. Evid. 802.

All four documents at issue were prepared by the actuarial firm, Mercer Human Resource Consulting ("Mercer") for internal use at Volvo. Exhibit 53 is Mercer's September 2004 valuation report of Volvo's benefit program for retirees. The other three documents are letters written to Volvo by Mercer on October 15, 2004 (Exhibit 54), March 7, 2005 (Exhibit 78), and February 5, 2008 (Exhibit 87). The statements at issue in Exhibits 53, 54, and 78 all concern the assumptions Mercer undertook in making predictions as to the future costs of retiree healthcare. The plaintiffs claimed that Volvo's failure to respond to, correct, or amend these statements, show that these assumptions represent the legal obligation Volvo believed it had to provide retiree healthcare benefits.

It was uncontested that the statements in the exhibits constituted out-of-court declarations, that no one from Mercer would be testifying at trial, and that the plaintiffs sought to admit the documents for the truth of the matters asserted therein. Nonetheless, the plaintiffs claimed that the challenged exhibits were admissible because the declarations were admissions by Volvo, offered against Volvo, and therefore not hearsay.

Specifically, the plaintiffs asserted that Volvo had manifested an adoption or belief in the truth of Mercer's declarations in Exhibits 53, 54, and 78 qualifying them as admissions under Rule 801(d)(2)(B). Fed. R. Evid. 801(d)(2)(B). "A party may manifest adoption of a statement in any number of ways, including [through] words, conduct, or silence." *United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001). For the plaintiffs to show that Volvo adopted the statements in Exhibits 53, 54, and 78 as its own, they must prove that Volvo representatives (1) heard or read, (2) understood, and (3) at a minimum, acquiesced to the meaning of those statements. *See Carr v. Deeds*, 453 F.3d 593, 607 (4th Cir. 2006).

The plaintiffs clearly failed to do so, because the plaintiffs had no evidence that any Volvo representative other than Kaye McLeod, Volvo's Director of Compensation and Benefits for Corporate Human Resources, had even read the

documents, and McLeod testified that she did not understand the purported admissions in the three exhibits.

Alternatively, the plaintiffs contended that the out-of-court statements in all the documents, including Exhibit 87, qualify as admissions under Rule 801(d)(2)(D). Rule 801(d)(2)(D) provides that a statement is an admission if it is made by the party's agent during the existence of the agency relationship and the statement concerns a matter within the scope of the agency. Fed. R. Evid. 801(d)(2)(D). The plaintiffs assert that Mercer was Volvo's agent and was acting within the scope of its agency when it created Exhibits 53, 54, 78, and 87.

An agent is "a person authorized by another to act on his account and under his control." Restatement (Second) of Agency § 1 cmt. e (1958). As the proponent of the evidence, the plaintiffs had the burden of demonstrating that Mercer was an agent and not an independent contractor of Volvo. *See Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 530 (D. Md. 2001). However, the plaintiffs did not overcome this burden.

The plaintiffs did not present any evidence that Mercer was authorized to speak on behalf of Volvo as to the duration of healthcare benefits Volvo promised to retirees in the collective bargaining agreements. Here, all Mercer was hired to do was provide financial predictions about the cost of healthcare benefits to Volvo's retirees.

Mercer was not tasked with determining if Volvo had assumed a legal obligation to provide those benefits forever. Thus, Mercer's statements in the exhibits cannot be considered Volvo's admissions, because Volvo never authorized Mercer to make such statements on its behalf.

Consequently, I found that Exhibits 53, 54, 78, and 87 were inadmissible. I therefore struck Exhibits 53, 54, and 78 from the plaintiffs' exhibit list. Even though it contained hearsay, I allowed Exhibit 87, however, because the defendants conceded at oral argument that the hearsay statements were not in dispute. *See* Fed. R. Evid. 807.

DATED: April 20, 2010

/s/ JAMES P. JONES
Chief United States District Judge