# Exhibit 10

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | |
|---|---|
| MARY QUESENBERRY, et al. | |
| Plaintiffs, | |
| v. | Judge James P. Jones<br>Magistrate Judge Pamela Meade Sargent |
| VOLVO GROUP NORTH AMERICA, INC. f/k/a VOLVO TRUCKS NORTH AMERICA, INC., et al., | Civil Action No. 1:09-cv-00022 |
| Defendants. | |

**DECLARATION OF JULIA PENNY CLARK**
**IN SUPPORT OF PLAINTIFFS' APPLICATION FOR FEES**

1.    My name is Julia Penny Clark.  I am an attorney duly licensed to practice law in Virginia and in the District of Columbia, and I am admitted to practice in the U.S. District Court for the Western District of Virginia.

2.    I am fully competent to make this declaration and I have personal knowledge of the facts that I describe here.

3.    I am a member of the firm Bredhoff & Kaiser, P.L.L.C. ("B&K"), and attorney of record in this matter for plaintiffs United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), UAW Local 2069, Mary Quesenberry, Paul E. Hollandsworth, Walter E. Viers, Curtis L. Cox, Robert K. Goad, and Shirley I. Tolbert (collectively, "plaintiffs").  I am lead attorney for plaintiffs in this litigation.

1

### Our Relationship with UAW

4.    B&K has represented UAW since at least the early 1990s, when UAW retained the firm for litigation with Navistar in a dispute over retiree health benefits.  That lawsuit resulted in a settlement that was approved in 1993 pursuant to Rule 23 of the Federal Rules of Civil Procedure, in *Shy v. Navistar*, 1993 WL 1318607 (S.D. Ohio 1993). I was the lead litigation counsel for UAW.  Since that time, I have represented UAW in litigation over retiree health benefits with General Motors Corporation, Ford Motor Company, and Chrysler, and also in defense of claims filed against UAW by Caterpillar, Inc., and by CNH America LLC, relating to past agreements over retiree health benefits.

### My Experience in Other Similar Cases

5.    For a different client, the United Steelworkers of America, I was lead attorney in another case involving retiree health benefits, *Trull v. Dayco Products LLC,* 178 Fed. App'x 247 (4th Cir. 2006). I was lead attorney in the development of the case, in discovery, and in a jury trial that resulted in a verdict in favor of the retirees.  I also successfully defended the employer's appeal to the United States Court of Appeals for the Fourth Circuit. My familiarity with the legal principles applied in that case, and more generally with the jurisprudence regarding collectively bargained promises for retiree health benefits, made it possible to litigate this case to judgment more effectively than if an attorney who lacked this specialized knowledge and experience had represented plaintiffs.

6.     I also had access to the results of legal research that other B&K attorneys have done in a number of other litigated cases involving retiree health benefits.  Some of those other cases were described in Exhibit I to the Plaintiffs' Motion for Class Certification (Dkt No. 51-9), paragraph 7.

## The Reputation and Quality of Plaintiffs' Counsel

7.     B&K enjoys a very strong reputation in the legal community.  In the 34 years that I have been part of the firm, the firm has received recognition in legal publications on several occasions as a small firm that provides very high quality representation to unions and employees.  Most recently, *American Lawyer* in January 2009 recognized the firm, along with approximately 20 other small firms around the United States, as one of the "top litigation boutiques of the year."  *See* Exhibit A.

8.     I also have received recognition for the quality of my work.  Most recently, I was listed in *Super Lawyers* magazine for November/December 2009 as one of the "top attorneys" in Washington, D.C., specializing in Employee Benefits/ERISA.  *See* Exhibit B, p. 31.  Four of my B&K colleagues, including Jeremiah Collins, were also listed as "top attorneys" specializing in Employment & Labor.  *Id.* p. 32.

9.     A summary of the background of each of the attorneys involved in this case, and of each person's responsibility in this case, is as follows:

**A) Julia Penny Clark**.  I graduated in 1973 from the University of Texas School of Law with highest honors.  Following graduation, I served as Law Clerk to Judge J. Braxton Craven, Jr., of the United States Court of Appeals for the Fourth Circuit and to Associate Justice Lewis F. Powell, Jr., of the United States Supreme Court.  I was an associate of B&K's

predecessor firm from late 1975 through 1980, and have been a partner (and now a member) of B&K since 1981.  Since the early 1980s, my legal practice has consisted primarily of providing advice and representation to employee benefit and welfare plans and to unions and employees in matters involving employee benefits, including extensive representation in federal court litigation.  I have more than thirty years' experience in complex federal trials and appeals, including briefing and argument in the U.S. Supreme Court.

**B) Kimberly M. Sánchez Ocasio**.  Ms. Sánchez is a 2007 graduate of Columbia Law School.  She served as law clerk to Judge Juan Torruella on the United States Court of Appeals for the First Circuit in 2007-2008.  She has been employed by B&K as an associate since December 2008.  This case has been the primary assignment that Ms. Sánchez has performed since she began work at B&K.

**C) Jeremiah A. Collins**.  Mr. Collins is a 1976 graduate of Stanford University Law School.  He was an associate of B&K's predecessor firm from mid-1976 through 1983, and has been a partner (and now a member) of B&K since 1984.   Mr. Collins has extensive experience in litigation in federal courts throughout the country, including litigation involving retiree health care issues.  He has briefed and argued numerous cases in twelve of the U.S. Courts of Appeals and four cases in the U.S. Supreme Court, in addition to representing unions and employees in complex litigation in federal district courts and state courts across the country.  Mr. Collins recently was lead counsel to the Steelworkers Union in a major retiree health benefits case, resolved by settlement.  *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07cv1999, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008).  In the week preceding trial of this case, Mr. Collins assumed the role of preparing briefs on proposed jury instructions and advising on legal issues that arose during the trial.  Mr. Collins' involvement was necessary because of the intensive time demands on Ms. Sánchez and me in the final days before trial began and during trial.

**D) Erin K. Pitts**.  Ms. Pitts is a 2004 graduate of University of California, Berkeley School of Law.  Following graduation she was employed as an associate in the Washington, D.C. office of Jones Day, served as law clerk to Judge Ann Claire Williams of the United States Court of Appeals for the Seventh Circuit and to Judge Roger L. Gregory of the United States Court of Appeals for the Fourth Circuit, and was an associate at Miner, Barnhill & Galland in Chicago, where she represented plaintiffs in a variety of employment discrimination matters.  Ms. Pitts began work as an associate at B&K in 2008 and during her time with the firm has devoted approximately 60 percent of her time to litigation involving ERISA.  Ms. Pitts was initially assigned to work with me on the case that

Volvo filed in North Carolina, and performed legal research and drafted briefs relating to jurisdiction, venue, and UAW's motion to transfer the case under 28 U.S.C. § 1404(a) to this district. When Volvo filed a motion in this action to dismiss, transfer, or stay the Plaintiffs' complaint, Ms. Pitts prepared the brief that we filed in opposition to that motion. Shortly before trial, Ms. Pitts prepared a brief in support of Plaintiffs' objections to the recommendation of the Magistrate Judge to deny Plaintiffs' Motion to Amend Class Certification. Her involvement at that point was necessary because of the intensive time demands on Ms. Sánchez and me in the final days before trial.

**E) Douglas Callahan.** Mr. Callahan graduated from Harvard Law School *magna cum laude* in 2007. He served as law clerk to Judge Bruce Selya on the United States Court of Appeals for the First Circuit in 2007-2008. He has been employed by B&K as an associate since 2008. Mr. Callahan has worked on a variety of matters in federal court in his time at B&K, including the Caterpillar and CNH America cases that are described in paragraph 4. Shortly before trial, Mr. Callahan prepared Plaintiffs' brief in opposition to Defendants' Motion in Limine to Strike Exhibits from Plaintiffs' Exhibit List. His involvement at that point was necessary because of the intensive time demands on Ms. Sánchez and me in the final days before trial.

**F) Rachel Osterman.** Ms. Osterman is a 2009 graduate of Yale Law School. She will serve as law clerk to U.S. District Court Judge Henry H. Kennedy, Jr. in 2010-2011. She has been employed by B&K as an associate in the year between her law school graduation and her clerkship. Ms. Osterman performed legal research relevant to Defendants' Motion in Limine to Strike Witnesses from Plaintiffs' Witness List, and performed legal research and drafted Plaintiffs' Evidentiary Brief Concerning Remaining Evidentiary Disputes. Ms. Osterman also performed research relevant to the presentation of several witnesses and expected deposition excerpts. Her involvement at that point was necessary because of the intensive time demands on Ms. Sánchez and me in the final days before trial.

**G) Paralegals.** B&K employs several experienced paralegals, who perform many services that would otherwise have to be performed by lawyers, for example, gathering and screening documents, performing non-legal research, arranging for electronic scanning and maintaining electronic databases of documents produced and received in discovery, searching document databases for materials requested by attorneys, citechecking briefs, drafting simple motions and proposed orders, managing hard-copy files during trial, and assisting with the display of electronic evidence in the courtroom.

## Work Necessarily Performed in this Case

10.     I have personal knowledge of the legal services provided by B&K in the course of representing plaintiffs in this litigation.  All of these services were either performed by me personally or were performed under my direct supervision.  These services are fully and fairly described in contemporaneous time records kept by B&K in connection with this matter.  I review those entries each month for accuracy before approving the bill to the UAW for services rendered in the preceding month.

11.     I exercised billing judgment throughout this case and made substantial downward adjustments in the hours that I billed to the UAW.  My primary reason for doing so was that Kimberly A. Sánchez was in her first year of legal practice when she was assigned to this case.  I took into account that she had not previously performed many of the tasks she was assigned to do in this case, that she needed more time to accomplish some of those tasks because of her relative inexperience, and that developing her skills to the point that she could prepare witnesses, defend depositions and present witness testimony at trial entailed some duplication of effort.  This exercise of billing judgment resulted in reducing the hours of her work that I billed to the client by more than 300 hours over the course of the case.  I eliminated time entries for some days altogether, and I reduced the hours reported on other days.

12.     In addition, in the course of preparing this application for attorneys' fees, I reviewed all of the detailed records for time billed to UAW and

6

eliminated additional time entries for which we had billed UAW. These time entries represented work that either was done by a lawyer who had only minimal involvement in the case or paralegal work that could have been characterized as clerical. Including the billing adjustments that I described in paragraph 11, I reduced the number of hours in this case by a total of more than 340 hours. I instructed that the remaining time entries be compiled into a single spreadsheet. That spreadsheet is attached to this declaration as Exhibit C.

13.     The work that remains after the billing adjustments that I made was all reasonably and necessarily performed for the purpose of representing the Plaintiffs in this litigation, as I have discussed in detail in paragraphs 24 through 32.

14.     Each entry in Exhibit C states the time expended, the date on which the work was done, the identity of the attorney, law clerk, or paralegal who performed the work, a description of the work performed, and the particular aspect of the proceeding which that work supported.

15.     The time expended may be broken down into the following categories.

a.     Case development and Filing Complaint

| Julia Penny Clark | 15.5 hours |
| Kimberly M. Sánchez | 1 hour |
| Paralegals | 28.75 hours |
| Local Counsel | 7.1 hours |

b.      Motion to dismiss or transfer in the case filed in W.D.N.C.

| Julia Penny Clark | 29.5 hours |
|---|---|
| Erin K. Pitts | 123.5 hours |
| Paralegals | 20.75 hours |
| Local Counsel | 2.2 hours |

c.      Motion to dismiss or transfer filed by Volvo in this case

| Julia Penny Clark | 19.5 hours |
|---|---|
| Erin K. Pitts | 20.5 hours |
| Paralegals | 7.25 hours |

d.      Motion for Preliminary Injunction

| Julia Penny Clark | 47.5 hours |
|---|---|
| Kimberly M. Sánchez | 40.25 hours |
| Erin K. Pitts | 3.75 hours |
| Paralegals | 19.5 hours |

e.      Class certification

| Julia Penny Clark | 15.75 hours |
|---|---|
| Kimberly M. Sánchez | 56.75 hours |
| Erin K. Pitts | 24.5 hours |
| Paralegals | 15.75 hours |

f.      Rule 26(f) & Initial Disclosures

| Julia Penny Clark | 12 hours |
|---|---|
| Kimberly M. Sánchez | 6 hours |
| Paralegals | 5.25 hours |

g.      Discovery

| Julia Penny Clark | 343 hours |
|---|---|
| Kimberly M. Sánchez | 412.5 hours |
| Paralegals | 357.5 hours |

h.      Legal Issues re Merits (other than in connection with Summary

Judgment)

| Julia Penny Clark | 15.5 hours |
|---|---|
| Kimberly M. Sánchez | 10.5 hours |
| Paralegals | 2.75 hours |

i.      Motions for summary judgment

| Julia Penny Clark | 132.5 hours |
|---|---|
| Kimberly M. Sánchez | 279.75 hours |
| Paralegals | 87.5 hours |

j.      Motion to Strike Jury Demand

| Julia Penny Clark | 37.75 hours |
|---|---|
| Kimberly M. Sánchez | 2 hours |
| Paralegals | 8.25 hours |

k.      Stipulation for Damages

| Julia Penny Clark | 4.5 hours |
|---|---|
| Kimberly M. Sánchez | 2.5 hours |
| Paralegals | 2.5 hours |

l.      Amended Pleadings

| Julia Penny Clark | .25 hours |
|---|---|
| Kimberly M. Sánchez | 2.5 hours |
| Paralegals | 2.5 hours |

m.   Client communications

| Julia Penny Clark | 4.25 hours |
|---|---|
| Kimberly M. Sánchez | 4.5 hours |

n.   Response to Defendants' Motions in Limine

| Julia Penny Clark | 23 hours |
|---|---|
| Jeremiah Collins | 1 hour |
| Kimberly M. Sánchez | 82 hours |
| Rachel Osterman | 26.75 hours |
| Douglas Callahan | 24.5 hours |
| Paralegals | 6 hours |

o.   Trial preparation and trial

| Julia Penny Clark | 371.75 hours |
|---|---|
| Kimberly M. Sánchez | 474.5 hours |
| Jeremiah Collins | 29.75 hours |
| Rachel Osterman | 68.5 hours |
| Paralegals | 410.5 hours |

p.   Fee petition preparation[1]

| Julia Penny Clark | .25 hours |
|---|---|
| Jeremiah Collins | .75 hours |
| Kimberly A. Sánchez | 2.5 hours |

---

[1] The time reported is through March 31, 2010.  This work will continue until briefing on this motion is complete.  We will submit a supplemental application for fees for the preparation of the petition at that time, along with work responding to Volvo's Motion to Correct Judgment. (Dkt 209).

| Paralegals | .25 hours |
|---|---|

## Hourly Rates

16.    The rate of $400 per hour is within the range of rates that I regularly bill to, and receive from, clients other than UAW for my services. Similarly, the rates of $270 per hour for associate attorneys with more than 3 years' experience, $225 per hour for associate attorneys with less than 3 years' experience, and $125 for paralegals are within the range of rates that B&K regularly bills to, and receives from, clients other than UAW for our services.

17.    Our hourly rates to UAW are lower than the rates described in paragraph 16. The rates that B&K charges to UAW (and to certain other nonprofit clients) are also below the market rates charged by attorneys of similar ability and experience. We perform work for UAW at below-market rates because UAW is a nonprofit organization whose goals and values are consistent with our own.

18.    In this litigation, UAW and the other plaintiffs consented that if we were successful we would apply to the Court for an award of fees at market rates rather than the discounted rates that UAW has paid to us throughout the litigation. We promised UAW that any amount awarded in fees would first be applied to reimburse UAW for the amounts it has paid B&K for work covered by the fee award.

19.    The rates described in paragraph 16 are within the range of rates that we have been awarded by courts for our services. In January 2009 Judge

Robert H. Cleland of the Eastern District of Michigan awarded fees for B&K services in connection with one of the settlements with General Motors at the following hourly rates:  $475 for members with more than 20 years' experience, $425 for other members, $290 for experienced associates, $250 for less experienced associates, and $125 for paralegals.  A copy of that fee award is attached as Exhibit D.  Under that award, my work was compensated at the rate of $475 per hour.  Similar awards, using the same rates, were made for the Ford and Chrysler cases that were settled during the same time period.

20.   The rates described in paragraph 16 are also well within the range of market rates in Washington, D.C. for lawyers experienced in federal litigation.  The U.S. Department of Justice maintains a "*Laffey* matrix" of market rates in Washington, D.C. for federal litigation.  Exhibit E is a copy of the current matrix.  (A similar "*Laffey* matrix" is maintained by a private service.  It appears at www.Laffeymatrix.com. It reports even higher market rates because it uses a different index to adjust the matrix rates for inflation.) The *Laffey* matrix is regularly used by the federal courts in the District of Columbia as a reference for determining hourly rates for fee awards.  *See Covington v. District of Columbia,* 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995).

21.   The *Laffey* matrix maintained by the Department of Justice shows that market rates for 2009-2010 in the District of Columbia for lawyers with 20 or more years' experience ("very experienced federal court litigators") are $465 per hour, market rates for senior associates (those with 4 to 7 years'

experience) are $270 per hour, market rates for junior associates (those with 1 to 3 years experience) are $225 per hour, and market rates for paralegals are $130 per hour.  The Department of Justice matrix is available at http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix.

### The Lodestar Calculation

22.     Applying the rates in paragraph 16 to the hours of work in paragraph 15, Plaintiffs apply for an award of $827,027.50 for attorney time and $121,631.25 for paralegal time, broken down as follows:

| Julia Penny Clark | 1072.25 hours | $400/hour | $428,812.50 |
| Jeremiah A. Collins | 31.5 hours | $400/hour | $12,600.00 |
| Erin K. Pitts | 172.25 hours | $275/hour | $ 46,156.25 |
| Kimberly A. Sánchez | 1377.25 hours | $225/hour | $310,325.00 |
| Douglas Callahan | 24 hours | $225/hour | $5512.50 |
| Local Counsel in VA | 7.1 hours | $200/hour | $1420.00 |
| Rachel Osterman | 95.25 hours | $225/hour | $21,431.25 |
| Local Counsel in NC | 2.2 hours | $350/hour | $770.00 |
| Paralegals | 972.5 hours | $125/hour | $121,631.25 |

### Expenses Necessarily Incurred for the Case

23.   B&K also charged UAW a total of $98,948.92 for expenses incurred in connection with the representation.  Those expenses (omitting expenses that were included in the Bill of Costs) were:

| Computer Research and Equipment Rental | $19,043.28 |
| Local Transportation | $521.25 |
| Meals | $467.16 |
| Messenger | $45.75 |

| | |
|---|---|
| Outside Photocopying | $4,530.95 |
| In house Photocopying | $ 9,244.00 |
| Overnight Courier | $ 2,426.65 |
| Postage | $ 140.45 |
| Scanning and Image Processing | $ 16,915.89 |
| Secretarial Overtime | $79.21 |
| Long-distance Telephone | $ 3,797.39 |
| Transcripts | $1084.08 |
| Travel | $37,495.40 |

Detailed itemization and receipts for these expenses are available if needed.

The expenses summarized in this table were reasonably and necessarily

incurred in connection with this litigation, and are expenses that paying clients

(including UAW) routinely reimburse to the firm.  We made an effort

throughout the litigation to use the most cost-effective services that were

available.

### The Time and Effort Required for this Litigation

24.    This case required an unusually intensive effort from counsel for a

period of more than a year.  The UAW was served with the complaint that Volvo

filed in the Middle District of North Carolina during the first week of January

2009, and Volvo's letters to retirees (sent the same day that the complaint was

filed) informed the retirees that Volvo would reduce their health benefits March
1, 2009. In a very short period of time, we were researching and briefing the
jurisdiction and venue questions that would determine whether Volvo could
succeed in litigating the case in its home district, rather than in this district,
where the assembly plant is located and where almost all of the retirees live. At
the same time we were interviewing retirees who were willing to serve as
plaintiffs and developing evidence for use to support a motion for preliminary
injunction. When the motion for preliminary injunction was denied, it was my
judgment that we needed to move the case forward as quickly as possible, in
order to minimize the hardship for retirees whose benefits had been reduced on
March 1.

25.    In document discovery Plaintiffs produced 14,848 pages of
documents to Defendants. In order to produce those documents, we had to
gather a much larger volume of documents potentially responsive to Volvo's
discovery requests and review them carefully to separate the negotiating
documents potentially relevant to retiree health benefits from those that were
related only to the many other subjects that were addressed in negotiations
between the UAW and Volvo at New River Valley, as well as for purposes of
identifying privileged documents and designating as confidential those
negotiating documents that might reveal to Volvo strategies that the UAW may
use in future negotiations. Thousands of pages of handwritten documents
were included in the materials that we reviewed, thus requiring even more time
than it would have taken to review printed documents.

15

26.    Between July and late October 2009 Volvo produced 9,566 pages of documents to Plaintiffs.  These documents included hundreds of pages of handwritten notes.  We had to review all of those documents to identify the documents that contained information that was potentially useful to support Plaintiffs' claims as well as to understand and anticipate Volvo's defenses.

27.    Because of the very large volume of documents that had been produced, and the need to review them and understand their contents, counsel were unable to begin depositions before September 1.  Magistrate Judge Sargent had cautioned counsel that the November 30 deadline for filing motions for summary judgment could not be extended without also continuing the trial date.  For that reason, the parties agreed on an extremely intensive schedule for completing all of the depositions within the short period from September 1 through October 23.  (The parties agreed on an extension of the September 30 deadline for fact depositions because some of the deponents were unavailable on the dates in September when counsel could have conducted the depositions.)

28.    Because of the witnesses' locations and limited availability, counsel travelled on two separate occasions to Dublin (for a total of six depositions), on two separate occasions to Greensboro (for two depositions), on two separate occasions to Detroit (for a total of six depositions), once to Pittsburgh, once to Dallas, once to Charlotte, and once to Allentown, Pennsylvania (for two depositions).  On 20 days in the period from September 1 through October 23, Ms. Sánchez and I were away from our office and either travelling to a

16

deposition site, meeting with witnesses for preparation, or in a deposition. On the days we were in our office, most of our time was occupied with preparation for upcoming depositions. Nineteen depositions ultimately were taken – 12 by Volvo and 7 by Plaintiffs.

29.    Volvo conducted its final depositions on October 23, leaving only 37 calendar days until motions for summary judgment were due. Ms. Sánchez and I began working intensively on Plaintiffs' motion for summary judgment, conducting both the legal research and the detailed review of the deposition transcripts and documents that were required to support Plaintiffs' motion. We filed Plaintiffs' motion November 30, and Volvo filed its motion for summary judgment on the same day. The deadline to file a brief in opposition to Volvo's motion for summary judgment was only 16 days later and the deadline for filing a reply brief in support of Plaintiffs' motion for summary judgment was only 10 days after that. Each of those briefs required very intensive work. Ms. Sánchez was occupied almost full-time on the Volvo case during this period of briefing on summary judgment motions and briefs. I devoted a very large percentage of my time to reviewing and editing the draft briefs, as well as to some of the legal research and drafting as well, in order to meet the deadlines. The work that we performed supporting our own summary judgment motion and opposing Volvo's summary judgment motion served a dual purpose. It also served as a detailed review of the documents and deposition record to identify evidence potentially useful at trial.

30.     On December 18, 2009, Volvo filed its motion to strike Plaintiffs'

demand for jury trial, making Plaintiffs' opposition to that motion due on

January 4, 2010.  Because Ms. Sánchez had other commitments during that

period, I performed almost all of the legal research and drafting of the brief in

opposition to that motion personally.

31.     After the brief in opposition to the motion to strike the jury

demand was completed, Ms. Sánchez and I spent a large majority of our

working time preparing for trial – narrowing down the materials that had been

identified in connection with the summary judgment motions to select the

witnesses and exhibits that we would present at trial, preparing proposed jury

instructions, contacting potential witnesses, and preparing outlines for

witnesses' testimony and for cross-examination of Volvo's likely witnesses.

32.     Volvo's motions in limine required additional legal research and

briefing in the month leading up to trial.  In the final two weeks before trial, we

had to travel to meet with witnesses and prepare them for trial testimony.

Because we needed to prepare briefs on the proposed jury instructions and on

evidentiary issues that were not covered by motions in limine, responses  to

Volvo's objections to the Magistrate Judge's recommendations that its

summary judgment motion and motion to strike the jury demand be denied,

and objections to the Magistrate Judge's recommendation that Plaintiffs'

motion to amend the class certification be denied, while at the same time

meeting with witnesses for trial preparation and preparing for cross-

examination, I enlisted the help of several lawyers in the office to assist with

specific research and briefing projects that a lawyer could perform without
being completely familiar with other aspects of the case.  It would have been
impossible to meet all of those deadlines and also prepare for specific trial
tasks without the help of Jeremiah Collins, Erin Pitts, Douglas Callahan and
Rachel Osterman.

### Preclusion of Other Work

33.    For large portions of the time from mid-July 2009 through the end
of trial, it was extremely difficult for me to address the needs of my other
clients.  I have eleven employee benefit funds that are regular clients and that
rely on me for general legal advice, attendance at trustees' meetings, drafting
legal documents, and other regular non-litigation tasks.  Other lawyers in the
firm were able to address the needs of some of those clients during the most
intensive periods of work on the Volvo case.  But the nature of the work for
some of the other clients makes it very inefficient for someone who is not
familiar with that client to try to learn enough to substitute for me when I am
unavailable.   With respect to those clients, there was no realistic option other
than asking them to be patient on everything except the most urgent matters
until the Volvo trial was done.

34.  For some of my regular clients – in particular, multiemployer
pension and health benefit funds – I am counsel to the trustees who are
appointed by a union and a lawyer from another firm is counsel to the trustees
who are appointed by the employers.  During the more intense periods of the
Volvo litigation, when I did not have time to address the needs of these clients,

there were occasions when the employer-side law firm performed that work that I otherwise would have done for such clients and for which I would have been paid at a higher hourly rate than the rate UAW paid us. One example is preparation of an extensive spreadsheet comparing bids made to a pension fund by candidates for an investment consultant position. The client had specifically asked me to prepare that comparison, but I was unable to do it on the schedule that the client needed, and the employer-side law firm did the work. Another example is a pension fund client that refers certain work to outside counsel in other parts of the country. I had to recommend that outside counsel perform legal research that I would otherwise have done for the client but could not do promptly due to the press of work on the Volvo case. That client also pays a higher hourly rate than the rate UAW paid us.

I declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge.

_Julia Penny Clark_
Julia Penny Clark

Dated: May 3, 2010