# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

MARY QUESENBERRY, et al.,    )
    **Plaintiffs**    )
    )
**v.**    )    **Civil Action No. 1:09cv00022**
    )
**VOLVO GROUP NORTH AMERICA,**    )    **REPORT AND**
**INC., f/k/a VOLVO TRUCKS NORTH**    )    **RECOMMENDATION**
**AMERICA, INC., et al.,**    )
    **Defendants**    )

This case is currently before the court on the Plaintiffs' Motion For Attorneys' Fees And Expenses, (Docket Item No. 212) ("Motion"). The Motion is before the undersigned by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The Motion was heard before the undersigned on June 14, 2010. Based on the arguments and representations of counsel, and for the reasoning set forth below, the undersigned now submits the following report and recommended disposition.

## I. Facts & Procedural History

The plaintiffs brought this class action against the defendants under § 301 of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185, and §§502(a)(1)(B) and (a)(3) of the Employment Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), seeking a declaration that the defendants could not unilaterally terminate or modify retiree healthcare benefits provided for the plaintiffs and other similarly situated retirees under certain collective

bargaining agreements.

The class representatives were all employed by the defendant Volvo Group North America, Inc., f/k/a Volvo Trucks North America, Inc., ("Volvo"), at the New River Valley Assembly Plant, ("NRV Plant"), in Dublin, Virginia, until their respective retirement dates, ranging from 2000 to 2007. They all were members of a bargaining unit represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, ("UAW"), and UAW Local Union 2069, ("Local 2069"). In January 2009, Volvo announced that it would unilaterally restructure the benefits coverage for current retirees of the NRV facility effective March 1, 2009. In particular, these proposed changes would require retirees not yet eligible for Medicare to begin paying monthly premiums in order to continue receiving benefits and to pay significantly greater deductibles, copayments and coinsurance than required under the collectively bargained benefit agreements. Retirees who were eligible for Medicare would be forced into a Medicare Advantage program, under which they would not receive the same benefits they were entitled to receive under the collective bargaining agreements and under which, in many instances, they would have to pay significantly greater deductibles, copayments and coinsurance than required under the collectively bargained benefit agreements.

On January 21, 2009, the plaintiffs filed their Complaint with this court. (Docket Item No. 1). Count I of the Complaint is brought under § 301 of the LMRA, and Count II of the Complaint is brought under §§ 502(a)(1)(B) and (a)(3) of ERISA. The plaintiffs sought the following relief: (1) a declaration that Volvo cannot unilaterally terminate or modify retiree healthcare benefits provided for under

collective bargaining agreements between Volvo and the UAW and Local 2069 and in the collectively bargained Volvo Plan; (2) preliminarily and permanently enjoin Volvo from terminating or modifying the benefits Volvo is required to provide to the class representatives and the class under the terms of the applicable collective bargaining agreements and the collectively bargained Volvo Plan; and (3) award the class representatives and the class benefits, pursuant to the terms of the collective bargaining agreements and the collectively bargained Volvo Plan, and/or monetary damages as are necessary to restore them to the position they would have occupied but for Volvo's alleged contractual and statutory violations.

On February 16, 2009, the plaintiffs filed a Motion For Preliminary Injunction, (Docket Item No. 20), in which they sought to enjoin the defendants from proceeding with the proposed restructuring of the retiree healthcare benefit plan until the court could determine whether Volvo would violate its statutory obligations under the LMRA and ERISA by unilaterally changing the terms of the proposed class members' health benefits coverage. On March 1, 2009, and July 1, 2009, Volvo implemented the proposed changes for non-Medicare eligible retirees and Medicare eligible retirees, respectively. On March 10, 2009, the undersigned recommended that the Motion For Preliminary Injunction be denied for failure to show the requisite likelihood of success on the merits, as well as a likelihood of irreparable harm without the issuance of an injunction. (Docket Item No. 38). This recommendation was adopted by the court on May 21, 2009. (Docket Item No. 52). On October 13, 2009, the plaintiffs filed an Amended Complaint to reflect the events that had transpired since the filing of the original Complaint. (Docket Item No. 72). However, the claims raised and relief sought in the Amended Complaint is the same as that sought in the original

Complaint, except that the plaintiffs sought restoration of their healthcare benefits to the extent of any unilateral changes made by Volvo through the date of judgment.

Prior to trial, the parties filed cross-motions for summary judgment, (Docket Item Nos. 79, 81). By Report and Recommendation entered March 2, 2010, the undersigned recommended that the court deny the parties' motions for summary judgment finding that:

1. The language of the CBAs [collective bargaining agreements] at issue is ambiguous, and, therefore, the court must consider extrinsic evidence of the parties' intent;

2. The evidence presented by the parties creates a genuine issue of material fact as to whether the parties intended to create vested healthcare benefits for those employees who retired prior to February 1, 2005; and

3. The evidence presented by the parties creates a genuine issue of material fact as to whether the parties intended under the 2005 CBA to create retiree healthcare benefits that could not be altered until the VEBA was exhausted.

(Docket Item No. 119). In reaching its decision, the court rejected the defendants' argument that any intention to vest employee benefits must be found in the clear and express language of the Plan. The court specifically held that, in the context of a collectively bargained benefits agreement, if the plan language is not clear as to whether the rights should vest, the court should allow extrinsic evidence of the parties' intentions rather than simply invoking the ERISA presumption against vesting. The court held that the proper rule to be applied, in this context, was whether the evidence, when taken as a whole, showed a clear intent to create vested benefits. By Order

dated March 18, 2010, Chief United States District Judge James P. Jones overruled the parties' objections to the Report and Recommendation, and denied the parties' motions for summary judgment. (Docket Item No. 158).

The case was tried to a jury before Judge Jones on March 22-26, 2010. At the close of the plaintiffs' evidence, defendants moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Judge Jones denied the motion. At the conclusion of the trial, two questions were submitted to the jury:

> 1. Did the plaintiffs prove by the greater weight of the evidence that it was the joint intent of the parties that the health benefits provided to retirees who retired before February 1, 2005, and their surviving spouses, could not be changed by Volvo unilaterally, that is, without the approval of any other party, after the collective bargaining agreement they retired under expired?
> ...
> 2. Did the plaintiffs prove by the greater weight of the evidence that it was the joint intent of the parties that the health benefits provided to retirees who retired on or after February 1, 2005, and their surviving spouses, could not be changed by Volvo unilaterally, that is, without the approval of any other party, after the collective bargaining agreement they retired under expired?

The jury answered "yes" to both questions.

On March 29, 2010, Judge Jones entered judgment on the jury's verdict. (Docket Item No. 196). The Judgment declared, pursuant to the jury's verdict, that the medical benefits provided to the represented retirees under the Volvo Trucks North American Retiree Health Benefits Plan, ("Volvo Plan"), could not be unilaterally terminated or modified by Volvo or the Volvo Plan. The Judgment also awarded

damages as set forth in a Stipulation of Damages reached earlier by the parties. The Judgment also permanently enjoined Volvo and the Volvo Plan from unilaterally terminating or modifying the healthcare benefits provided to the Class and directed Volvo and the Volvo Plan to restore such benefits to the extent of any unilateral changes previously made.

## II. Analysis

Plaintiffs' Motion seeks an award of attorneys' fees and expenses in the amount of $1,047,601.42 pursuant to § 502(g) of ERISA, 29 U.S.C.A. §1132(g)(1) (West 2009). Defendants oppose the Motion on a number of grounds. First, the defendants argue that the plaintiffs are not entitled to an award of attorneys' fees and expenses because the plaintiffs did not prevail on their ERISA claim. Second, the defendants argue that, even if the court construes its judgment as an award on plaintiffs' ERISA claim, the court, in its discretion, should not award fees and expenses. Third, the defendants argue that, should the court enter an award for fees and expenses, it should be for less than the amount sought by the plaintiffs.

ERISA provides that a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. 1132(g)(1). Therefore, the determination of whether to award a party attorneys' fees in an ERISA action is "completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir. 1993). Furthermore, a party is no longer required to show that the party prevailed in the litigation to be entitled to attorneys' fees under ERISA. Earlier this year, the Supreme Court held that §1132(g)(1) did not

require that attorneys' fees could be awarded to only a "prevailing party." *Hardt v. Reliance Standard Life Ins. Co.*, ___ U.S. ___, 130 S. Ct. 2149, 2156 (May 24, 2010). Based on its earlier decision in *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983), the Court held that a party had to demonstrate only "some degree of success on the merits" to be eligible for an award of attorneys' fees under §1132(g)(1). *Hardt,* 130 S. Ct. at 2158 (quoting *Ruckelshaus*, 463 U.S. at 694). The Court continued to state:

> A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Hardt,* 130 S. Ct. at 2158 (quoting *Ruckelshaus*, 463 U.S. at 688 n. 9).

The plaintiffs in this case brought their claims under both ERISA, which allows for an award of attorneys' fees, and the LMRA, which does not allow for an award of fees. *See United Food & Commercial Workers v. Marval Poultry Co., Inc.*, 876 F.2d 346, 350 (4th Cir. 1989) (without express statutory authorization for an award of attorneys' fees in § 301 of the LMRA, the court should adhere to the American Rule, which requires each party to bear it own litigation costs). The defendants argue that the court may not award attorneys' fees in this case because judgment was entered on only the plaintiffs' LMRA claim, and not on their ERISA claim. A review of court's Judgment, however, shows that it does not state whether judgment was entered on either or both of the plaintiffs' claims. The Judgment does order the Clerk to close the case, which should not have been done unless the Judgment resolved all outstanding

claims. A review of the court's record shows that, prior to trial, the parties filed cross-motions for summary judgment. Included in the defendants' motion was a request for summary judgment on the plaintiffs' ERISA claim, which the court denied, leaving both the plaintiffs' LMRA and ERISA claims pending for trial. Furthermore, a review of the trial transcript shows that Judge Jones did not enter judgment as a matter of law during trial as to either claim.

While the questions that went to the jury for decision were questions regarding the intent of the parties in the formation of the underlying contract, that does not mean that the judgment entered pursuant to the jury's verdict was entered on only the LMRA claim. There is no right to jury trial on an ERISA claim. *See Phelps v. C. T. Enters., Inc.,* 394 F.3d 213, 222 (4th Cir. 2005); *see also Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Va.*, 876 F. Supp. 809, 815 (E.D. Va. 1995). On the other hand, the LMRA, as held previously in this case, provides a right to trial by jury on disputed questions of fact. *See Quesenberry v. Volvo Group N. Am., Inc.,* 2010 WL 890051, at *7 (W.D. Va. March 5, 2010). As stated in this court's earlier rulings, a court should view retiree health benefit plans differently depending on whether the benefit plan was promulgated by the employer only or reached through the collective bargaining process. When the health plan is not collectively bargained, there is a presumption against vesting, and any intention to vest must be found in "clear and express language" of the plan. *See Gable v. Sweetheart Cup Co.*, *Inc.,* 35 F.3d 851, 855 (4th Cir. 1994). In this case, however, the employee welfare plan at issue was created through the collective bargaining process. Whether benefits promised in a collective bargaining agreement survive the termination of that agreement depends on the intent of the parties as expressed in their agreement. *See Keffer v. H.K. Porter Co.,*

*Inc.*, 872 F.2d 60, 62 (4th Cir. 1989) (citing *District 29, United Mine Workers v. Royal Coal Co.*, 768 F.2d 588, 590 (4th Cir. 1985)). When, as here, the language of a collective bargaining agreement is ambiguous, the parties may turn to extrinsic evidence to prove the parties' intent to prove the terms of the plan. *See Trull v. Dayco Prods., LLC*, 329 F. Supp. 2d 658, 674 (W.D. N.C. 2004) (citing *Keffer,* 872 F.2d at 63).

The Sixth Circuit Court of Appeals recently explained this distinction in *Reese v. CNH Am. LLC*, 574 F.3d 315, 321 (6th Cir. 2009).

> ...[W]e assess health-care-benefit promises differently depending on whether the [plan] stemmed from a CBA or not. When the health plan was not collectively bargained, we require a clear statement before we will infer that an employer meant to promise health benefits for life. "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language." ...
> When the health plan stems from a CBA, by contrast, we apply "ordinary principles of contract interpretation" to determine whether benefits have vested....

(Internal citations omitted.)

While the Fourth Circuit has not addressed this distinction as clearly in a published opinion, in has recognized this distinction in at least one unpublished opinion. In *Trull v. Dayco Prods., LLC*, 178 F. App'x 247 (4th Cir. Apr. 28, 2006), a panel of the court recognized that *Gable's* requirement that an intent to vest benefits must be found in the "clear and express" language of the plan itself does not apply

when the plan was formed as a result of collective bargaining. In *Trull*, the court upheld the district court's decision that, if the collective bargaining agreement is ambiguous, a jury should decide whether the parties intended the benefits to vest. *See* 178 F. App'x at 250.

In this case, there was a dispute in fact as to evidence of the parties' intent. It was that dispute in fact, which Judge Jones allowed the jury to decide. Based on the evidence before it, the jury decided that it was the parties' intent that the defendants could not unilaterally change the health insurance benefits provided to its retirees.

The plaintiffs in this case sought enforcement of their employee benefit plan under the LMRA as well as §§ 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). Section 502(a)(1)(B) states:

> A civil action may be brought –
>> (1) by a participant or beneficiary –
>>> ...
>>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) states:

> A civil action may be brought–
>> ...
>>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the

terms of the plan....

29 U.S.C. § 1132(a)(3). Thus, once the terms of an employee benefit plan are established, whether it is under the clear language of the plan itself as required by ERISA for employer promulgated plans, or through establishing the terms of the parties' agreement entered into through the collective bargaining process, a participant may sue under ERISA to enforce his rights under the plan. *See Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1009 (6th Cir. 2009) (once benefits vest pursuant to a collective bargaining agreement, an employer's unilateral modification or reduction of benefits constitutes a § 301 violation); *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 914 (6th Cir. 2000) (if parties intend to vest retiree health benefits under a collective bargaining agreement, and the terms of the collective bargaining agreement are breached, there is an ERISA violation as well as an LMRA violation). That being the case, I find that the judgment entered in this case awards judgment on both the plaintiffs' LMRA and ERISA claims. Since judgment has been entered in the plaintiffs' favor on their ERISA claim, they have shown "some degree of success on the merits," and the court may, in its discretion, award attorneys' fees.

In *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990), the Fourth Circuit approved of the district court's use of the five factors set out by the Fifth Circuit Court of Appeals in *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980), in determining whether to award attorneys' fees in an ERISA case. *See also Quesinberry*, 987 F.2d at 1028-29. These five factors are:

1.    degree of opposing parties' culpability or bad faith;
2.    ability of opposing parties to satisfy an award of attorneys' fees;

3.   whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
4.   whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
5.   the relative merits of the parties' positions.

*Reinking*, 910 F.2d at 1217-18 (quoting *Bowen*, 624 F.2d at 1266). The Fourth Circuit has held that none of these five factors is determinative, but rather they provide general guidelines for the district court's use in determining whether to grant a request to award attorneys' fees. *See Quesinberry*, 987 F.2d at 1029. Also, it is not necessary that all five factors weigh in favor of an award of fees before an award is justified. *See Reinking*, 910 F.2d at 1218. The Fourth Circuit also has held that, when considering these five factors, a district court also should consider the remedial purposes of ERISA to ensure employees' rights and to protect access to the federal courts. *See Quesinberry*, 987 F.2d at 1029-30. "The[se] factors simply constitute the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993) (citing *Quesinberry*, 987 F.2d at 1029).

In *Hardt*, the Supreme Court specifically held that the consideration of these five factors is not required in a district court's determination with regard to a motion for attorneys' fees. "Because these five factors bear no obvious relation to §1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 130 S. Ct. at 2158. The Court did note, however, that once a claimant has shown "some degree of success on the merits," a court may consider these five factors in deciding

whether in its discretion to award attorneys' fees. *See Hardt,* 130 S. Ct. at 2158 n.8. That being the case, this court will consider whether, in light of the five relevant factors and the remedial purposes of ERISA, it should award attorneys' fees and expenses to the plaintiffs.

As a starting point, the Fourth Circuit has held that the remedial purposes of ERISA require that "a prevailing individual beneficiary 'should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust.'" *Quesinberry*, 987 F.2d at 1029 (quoting *Reinking*, 910 F.2d at 1218). Regarding the culpability of the parties' conduct, the plaintiffs argue that Volvo's conduct in breaching its agreements to provide continuing health benefits for retirees qualifies as culpable conduct supporting an award of fees against it. Volvo argues that it was justified in opposing the plaintiffs' efforts, which they ultimately abandoned at trial, to prove that the parties had intended to vest lifetime benefits that could not be changed. Volvo further argues that the court's rulings in denying the plaintiffs' request for entry of a preliminary injunction and in denying plaintiffs' motion for entry of summary judgment show that Volvo was justified in its position. More specifically, Volvo argues that the court's finding that the collective bargaining agreements at issue were ambiguous and subject to one of at least three different plausible interpretations shows that they did not act in bad faith. Insofar as Volvo's actions, however, did violate what the jury found to be the terms of their agreement with the Union regarding retiree healthcare benefits, I find that this factor supports an award of fees.

With regard to the second factor, neither side contests that the defendants have

the ability to satisfy an award of attorneys' fees. While the defendants' ability to pay, standing alone, would not justify an award of fees, the consideration of the factor in this case supports an award of attorneys' fees. Regarding the third factor, the plaintiffs argue that an award of fees would deter other persons acting under similar circumstances. The defendants, on the other hand, argue that this case involved novel and unique circumstances, and, it is unlikely that another case would arise with similar circumstances. Therefore, defendants argue, an award of attorneys' fees would serve no deterrent function. In their memorandum filed in support of the Motion, plaintiffs have conceded that this case was "novel and difficult" and "heavily fact-dependent." Thus, consideration of this factor would not support an award of attorneys' fees.

With regard to the fourth factor, there is no dispute that the parties requesting an award of fees in this case sought to benefit all similarly situated participants or beneficiaries, in that they sought and obtained permission for this case to proceed as a class action. It also is true that the plaintiffs sought and obtained a ruling on a significant legal question regarding ERISA not previously answered in this district: whether the intent to vest retiree health benefits that are collectively bargained must be shown by the clear language of the benefit plan as the defendants unsuccessfully argued. Consideration of this factor supports and award of attorneys' fees.

With regard to the fifth factor, the plaintiffs argue that the end result in this case – the court's entry of judgment in their favor –  shows that the relative merit of their position was stronger and supports an award of fees. While the court did, ultimately, enter judgment in the plaintiffs' favor, it is important to note that the plaintiffs did not receive all the relief originally requested. As stated above, plaintiffs, when faced with

the evidence presented by their own witnesses at trial, were forced to abandon their original claim that they had vested lifetime health benefits that could not be changed. Therefore, if the court awards attorneys' fees, those fees rightfully should be reduced based on the plaintiffs' limited success on the merits. *See Christian v. Dupont-Waynesboro Health Care Coverage Plan*, 12 F. Supp. 2d 535, 538 (W.D. Va. 1998) (courts should exercise discretion to reduce fees awarded based on the limited success of the party receiving the fee award).

Lastly, the plaintiffs also argue that their inability to pay attorneys' fees in this case supports an award of fees against the defendants. In particular, the plaintiffs and all members of the classes are retirees or dependents of retired or deceased workers. Plaintiffs' counsel effectively argues that no individual retiree would have been able to finance this case. Even if the fees incurred were to be shared equally by all class members, according to plaintiffs' counsel's calculation, each class member would be responsible for approximately $2,400.00 in fees and expenses. Although counsel admits that the UAW agreed to advance certain fees and expenses to allow the litigation to be brought, counsel argues that the costs associated with the case are very significant for a nonprofit labor organization.

Based on consideration of all of the above, I find that the weighing of these factors supports an award of attorneys' fees. Once the court determines that an award of fees is appropriate, it must next determine the appropriate amount to award. The plaintiffs seek an award of fees and expenses totaling $1,047,601.42. Of this amount, the plaintiffs seek an award of $948,658.75 in legal fees. To determine the proper amount of fees to award, courts in the Fourth Circuit use the so-called Lodestar

method by multiplying the number of attorney hours reasonably expended on the matter by a reasonable hourly rate. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994); *Christian*, 12 F. Supp. 2d at 538 (applying the Lodestar method to determine attorneys' fees in ERISA litigation).

In this case, the plaintiffs seek an award of fees for 3,754.30 hours of legal work. The plaintiffs request that this time be reimbursed at rates ranging from $125 an hour for paralegal time to $400 an hour for attorneys with more than 30 years of experience. In determining both the reasonable number of hours expended and the reasonable hourly rate, the courts should consider 12 factors. *See Rum Creek*, 31 F.3d at 175 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Those factors are: 1) the time and labor required by the case; 2) the novelty and difficulty of the questions involved; 3) the level of skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *See Rum Creek*, 31 F.3d at 175.

When considering the rates requested in light of these factors, the undersigned finds the hourly rates requested to be reasonable. Plaintiffs have requested $125 an hour for paralegal time, $225 an hour for associates with less than three years'

experience, $275 an hour for associates with more than three years' experience[1] and $400 an hour for partners. Plaintiffs also seek reimbursement for a limited number of hours by local counsel in Virginia at a rate of $200.00 an hour and by local counsel in North Carolina at a rate of $350.00 an hour. Defendants do not argue that these rates are unreasonable. Rather, the defendants argue that the court cannot accurately assess what is a reasonable rate in this case because plaintiffs' counsel has not revealed the actual rate charged. Plaintiffs' counsel has admitted that the "UAW agreed to advance counsel's fees at a discounted rate." Counsel has not, however, provided information concerning that rate to the court. Counsel has stated: "The rate that [Bredhoff & Kaiser] charges to UAW (and to certain other nonprofit clients) are ... below the market rates charged by attorneys of similar ability and experience. We perform work for UAW at below-market rates because UAW is a nonprofit organization whose goals and values are consistent with our own."

To adopt the defendants' argument would, in the undersigned's opinion, unfairly penalize plaintiffs' counsel because counsel agreed to accept representation in this case with an understanding that, short of a favorable verdict on the ERISA claim, they would receive less than market rate legal fees. Under the arrangement, it appears counsel's fee was somewhat contingent on the outcome of the case. Therefore, it appears only fair that when counsel bears some of the risk of an unfavorable verdict, counsel also should benefit from a favorable verdict.

Plaintiffs' lead counsel, Julia Penny Clark, has provided a declaration that the

---

[1]Clark's declaration states that plaintiffs seek $270.00 an hour for associates with more than three years' experience. The charts contained in the declaration and the attached itemization states $275.00 an hour.

hourly rates sought are "within the range of rates that [Bredhoff & Kaiser] regularly bills to, and receives from, clients other than UAW for our services." Plaintiffs also have provided evidence that the rates sought are within those market rates found on the "Laffey Matrix" maintained by the U.S. Department of Justice for Washington, D.C, lawyers experienced in federal lawsuits. *See Laffey v. NW. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983); *see also Covington v. District of Columbia*, 57 F.3d 1101,1105 & n. 14, 1109 (D.C. Cir. 1995).

According to Clark, Bredhoff & Kaiser has been representing the UAW and its members in retiree health benefits litigation since the early 1990s. Clark also represents other clients in similar cases. Clark states that her expertise and experience in this area have made it possible for her to litigate this case more effectively than a less experienced attorney.

Plaintiffs also have provided a declaration from Peter Buscemi, an attorney licensed to practice law in the District of Columbia. Buscemi practices law in the firm of Morgan, Lewis & Bockius, LLP in the Litigation Practice Group. Buscemi has more than 30 years' experience practicing law. Buscemi states that rates sought by plaintiffs' counsel in this case are "well below the high end of market rates for employee-benefits lawyers practicing in the Washington, D.C. area." The plaintiffs also have provided a declaration from Michael F. Saggau, associate general counsel of the UAW since 1999. In his declaration, Saggau states that he is responsible for coordinating retiree health care litigation involving UAW retirees throughout the United States, and, in that capacity, he is familiar with the work of attorneys practicing in the area of ERISA and LMRA law throughout the country. Saggau stated that the

Bredhoff & Kaiser firm, and Clark, in particular, are in the top echelon of lawyers performing this type of work.

Plaintiffs also have provided evidence from local counsel retained with regard to this litigation in this district and the Middle District of North Carolina. J. Griffin Morgan represented the UAW in the declaratory judgment action filed by the defendants in North Carolina which was, eventually, transferred to this district and consolidated with this case. In his declaration, Morgan states that he has practiced extensively in the areas of labor, employment, workers' compensation and civil rights law for more than 28 years. Morgan also states that he is familiar with the prevailing rates for legal services in federal litigation in the Middle District of North Carolina and that the rates requested in this case are within the rates charged throughout North Carolina for comparable legal services. Morgan states that he charged, and was paid by, the UAW a rate of $350.00 an hour for his work as local North Carolina counsel. Plaintiffs also have provided evidence from James H. Montgomery, who acted as local counsel in this case. The evidence shows that Montgomery charged the UAW a rate of $200.00 an hour.

Based on the above, it appears that the evidence of customary rates by these attorneys and  similarly experienced attorneys in similar cases supports an award of attorneys' fees at the rates requested. Further,  the experience, reputation and ability of the attorneys, as well as the nature and length of the professional relationship with the client, supports an award of attorneys' fees at the rates requested. Also, the risk assumed by counsel in the outcome of the litigation supports an award of attorneys' fees at the rates requested. Therefore, I find that the rates requested are reasonable

rates for this case.

The court next must consider whether the number of hours expended for legal work on this matter was reasonable.[2] Based on a thorough review by the undersigned of the hours expended, it would appear that a number of adjustments are warranted.

Some adjustment in the number of hours is warranted based on duplication of effort.[3] While the undersigned is cognizant of the fact that it is difficult for a single attorney to prepare and try a case of this complexity, this court is not willing to impose fees upon another party for the mere attendance of a second attorney at depositions. Furthermore, while it is reasonable to expect counsel to need the assistance of an associate or paralegal at trial, the fee request seeks reimbursement for not only two attorneys' time for trial, but also for three paralegals' time. The undersigned simply finds that request excessive. Therefore, the court will allow fees for both attorneys for trial and for only two of the paralegals. That being the case, the undersigned finds that the number of hours expended should be reduced by 162.5 hours for a corresponding reduction in the fees of $32,262.50 for this duplication of effort.

While I have allowed fees for a second attorney to be present to assist at the trial of this matter, I am not persuaded that it is reasonable to allow the fees sought for

---

[2]In Clark's declaration, she states that plaintiffs are seeking $827,027.50 in attorneys' fees and $121,631.25 in paralegal fees for a total of $948,658.75. However, the chart breaking down the fees sought by each attorney contains several multiplication errors. By the court's calculations, the total fees sought are $949,333.75. Furthermore, Clark states that the plaintiffs seek reimbursement of $98,948.92 in expenses, but the expenses listed total only $95,791.46.

[3]In an addendum to this Report and Recommendation, the undersigned has set forth any specific time entries that have been reduced by category.

all of the second attorney's trial preparation time. The plaintiffs seek fees for 173.25[4] hours of time for a total of $38,981.25 for this second attorney's trial preparation time. This time amounts to this attorney working full-time, 40 hours a week for more than four weeks to prepare for trial. The undersigned finds this amount excessive, especially in light of the fact that the only part of the trial actually conducted by this attorney was the examination of four witnesses, whose testimony, when transcribed, was contained on 20 pages total of the trial transcript. This attorney did participate in the reading of portions of three witnesses' deposition testimony, but the court finds that the reading of deposition testimony should take little, if any, preparation. Therefore, the undersigned finds that amount of hours for trial preparation for this attorney should be reduced by 133.25 hours with a corresponding reduction in fees of $29,981.25.

Also, a number of the paralegal hours at trial appear to have been expended for more clerical or administrative tasks rather than legal work. These tasks include driving witnesses to the airport, making hotel reservations or arranging for the use of needed equipment for trial. Therefore, the undersigned finds that the number of paralegal hours should be reduced by 7.75 hours for a corresponding reduction in fees of $968.75.

The court also is persuaded by defense counsel's argument that plaintiffs'

---

[4]The plaintiffs actually seek fees for 213.25 hours for trial preparation and trial for the second attorney. Assuming that this attorney was in trial eight hours a day for the five days of trial, that would leave 173.25 hours of trial preparation time. It is also important to note that on two days of trial, this attorney billed in excess of 19 hours on each day. That would have left the attorney with less than five hours a day on each of these days for sleeping, dressing, eating and any other activity not related to the trial of this case.

counsel should not be allowed to recover fees for additional legal work required by plaintiffs' counsel's failure to properly disclose the identities of the witnesses they intended to call at trial. Therefore, the undersigned finds that the attorneys' hours should be reduced by 102.75 hours for a corresponding reduction in fees of $25,481.25 for legal work performed on the defendants' motion in limine to prevent the testimony of those witnesses not properly disclosed by plaintiffs' counsel.

Along those same lines, the undersigned also finds that the fees awarded to the plaintiffs for their counsel's time spent on the unsuccessful motion for partial summary judgment as to liability should be reduced to reflect the lack of success on that motion. Plaintiffs request to be awarded fees for 211.75 hours or $59,281.25 in attorney time and 44 hours or $5,500.00 in paralegal time for preparation of the plaintiffs' motion for partial summary judgment, memorandum in support and reply memorandum. Also, plaintiffs seek fees for an additional 58 hours of attorney time spent reviewing depositions or $13,050.00, which appears to be related, at least in part, to the preparation of the plaintiffs' summary judgment motion. Therefore, the attorney hours requested on this motion amount to one attorney working full-time, 40-hours a week for more than six weeks. While this amount of time might not have been excessive if it had resulted in summary judgment being entered in the plaintiffs' favor, that was not the result.

The court previously had ruled that the collective bargaining agreements at issue in this case were ambiguous and, therefore, the parties' intent had to be established by a review of all the evidence, including the extrinsic evidence. Nonetheless, a portion of the plaintiffs' motion sought entry of judgment declaring

that the collective bargaining agreements prior to 2005 established vested benefits that could not be changed. The problem with this argument was that the evidence presented in discovery by many of the Union's own witnesses showed that the Union regularly negotiated changes in retiree health benefits. Thus, any reasonable attorney reviewing this evidence prior to the filing of the motion should have known that the court could not enter summary judgment in their clients' favor on this issue. That being the case, the court finds the attorney and paralegal time spent on this motion should be reduced by approximately half. Therefore, the undersigned will allow 92 hours of attorney time at a rate of $225.00, 33 hours of attorney time at a rate of $400.00 and 22 hours of paralegal time at a rate of $125.00 an hour. The fee will result in a reduction of 145.25 of attorney time and 22 hours of paralegal time for a corresponding reduction of $41,181.25.

The court also finds that adjustments should be made in the amount of fees requested for preparation of jury instructions. The plaintiffs request an award for 45.75 hours or $11,343.75 in attorneys' fees for the preparation of jury instructions. A review of the court's record shows that, arguably, nine instructions of the 38 pages of jury instructions offered by the plaintiffs were not standard, but rather case-specific, instructions. Of these nine case-specific instructions, it appears that the court actually incorporated parts of four of the instructions into the final instructions delivered to the jury. That being the case, it appears a significant reduction should be made in the amount awarded for preparation of jury instructions. The undersigned finds that a reasonable amount of time for the preparation of the nine case-specific instructions offered by the plaintiffs is 10 hours, eight of which should be reimbursed at $225.00 an hour, and two of which should be reimbursed at $400.00 an hour, for a reduction

of 35.75 hours or $8,743.75 in attorneys' fees.

The court finds that additional adjustments in the fees awarded are warranted based on plaintiffs' counsel's failure to document precisely what work was being done by counsel. In particular, the schedule of time expended by counsel contains numerous entries for "analysis" or "document review" without explaining what is being analyzed or reviewed. Without such an explanation, the court cannot determine whether the hours expended on the work were reasonable or whether the work was properly performed by an associate or could have been adequately performed by a paralegal. Thus, I find that the fees sought should be reduced by 52.75 hours for a corresponding reduction in fees of $11,868.75.

Based on the above reductions, the court finds that a reasonable attorneys' fee of $798,071.25 should be awarded to the plaintiffs comprised of the following:

1,042.25 hours of attorney time at $400.00 an hour or $416,900.00 in fees;

2.2 hours of attorney time at $350.00 an hour or $770.00 in fees;

172.25 hours of attorney time at $275.00 an hour or $47,368.75 in fees;

981.75 hours of attorney time at $225.00 an hour or $220,893.75 in fees;

7.1 hours of attorney time at $200.00 an hour or $1,420.00 in fees; and

885.75 hours of paralegal time at $125.00 an hour or $110,718.75 in fees.

The plaintiffs also seek an award of $95,791.46 for expenses incurred in this

litigation.[5] It is important to note that the Clerk has entered a Bill of Costs assessing taxable costs against the defendants of $9,572.98 for the costs allowable under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. While some courts do not allow costs in excess of taxable costs to be awarded in ERISA cases, *see O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728 (E.D. Va. 1998), it appears that others allow additional expenses to be reimbursed as attorneys' fees under 29 U.S.C. § 1132(g)(1). *See Emmenegger v. Bull Moose Tube Co.,* 33 F. Supp. 2d 1127 (E.D. Mo. 1998) (photocopying and computer research expenses reimbursable based on finding that those types of expenses are reasonable out-of-pocket expenses customarily billed to and paid by clients); *see also Griffeth v. Sheet Metal Workers' Local Unions & Councils Pension Plan*, 34 F. Supp. 2d 1170 (D. Ariz. 1998); *Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs. Health & Welfare Plan,* 814 F. Supp. 799, 804 (D.Neb. 1993). Based on my review of the competing cases, this court holds that reimbursement in ERISA cases of out-of-pocket expenses customarily charged fee-paying clients in the relevant economic market should be allowed as a component of an attorneys' fee award under § 502(g).

Based on the undersigned's review of the requested expenses, some appear reasonable and reimbursable and will be awarded. For instance, insofar as the plaintiffs seek reimbursement of the cost of photocopying, scanning, computer research, lodging, meals and transportation costs for necessary travel and transcripts, the undersigned will allow these costs because they are the type of expenses routinely

---

[5]The Memorandum In Support Of Plaintiffs' Motion For Attorneys' Fees And Expenses states that plaintiffs seek an award of expenses totaling $98,948.92. The declaration of plaintiffs' lead counsel, however, seeks an award of expenses totaling only $95,791.46 as the amount of expenses sought less those included in the Bill of Costs.

billed to and paid by clients in this district. The court will reduce the amount of travel expenses awarded by $7,400.00 to reflect its earlier finding with regard to the reasonableness of the presence of two attorneys at discovery depositions. This figure represents approximately one-half of the travel expenses for the months of August through October 2009 when the discovery depositions were taken. The court also will reduce the expenses awarded by $4,226.40 because a number of the expenses for which reimbursement is sought are more properly considered part of the law firm's overhead or cost of doing business, and the court will not allow those costs. Those costs include $450.26 for computer equipment rental, $45.75 for messenger services, $2,426.65 for overnight courier deliveries, $140.45 in postage, $79.21 in secretarial overtime and $1,084.08 in long distance telephone tolls.[6]

Based on the above, the court finds that reasonable attorneys' fees in this case include $84,165.06 in expenses incurred.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    A employee welfare benefit plan reached through the

---

[6]The more complete list of fees and expenses also includes a total of $11,688.31 in "litigation support services." It does not appear, however, that the plaintiffs are seeking reimbursement of this amount. Insofar as they are seeking this amount, the court finds that it, too, should not be reimbursed because those services should more properly be considered part of the law firm's overhead.

collective bargaining process may be enforced by suit under LMRA or ERISA;

2. Judgment in this case was entered in the plaintiffs' favor on both their LMRA and ERISA claims;

3. The plaintiffs, as prevailing parties, have shown some degree of success on the merits;

4. The court may, in its discretion, award attorneys' fees to the plaintiffs under ERISA § 502(g);

5. The court finds that the facts and circumstances of this case support an award of attorneys' fees;

6. The court finds that the attorney hourly rates requested are reasonable;

7. The court finds that 2,205.55 hours of attorney time and 885.75 hours of paralegal time are reasonable for the work performed in this case;

8. Reasonable out-of-pocket expenses customarily charged fee-paying clients should be allowed as a component of an attorneys' fee award under ERISA § 502(g); and

9. The court finds that a reasonable attorneys' fee of $882,236.31 should be awarded to the plaintiffs.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion and award plaintiffs' attorneys' fees totaling $882,236.31.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within 14 days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of

court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 20th day of July 2010.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

**Addendum to Report and Recommendation**
**United States Magistrate Judge Pamela Meade Sargent**

Itemized reductions made based on duplication of efforts:

| Date | Biller | Reduction in Hours | Reduction in Fees |
|------|--------|--------------------|--------------------|
| 8/20/09 | KMS | 2.0 | $450.00 |
| 8/27/09 | KMS | 1.0 | $225.00 |
| 8/28/09 | KMS | 5.5 | $1,237.50 |
| 9/4/09 | KMS | 1.0 | $225.00 |
| 9/16/09 | KMS | 8.0 | $1,800.00 |
| 9/17/09 | KMS | 8.75 | $1,968.75 |
| 9/25/09 | KMS | 3.0 | $675.00 |
| 9/27/09 | KMS | 5.0 | $1,125.00 |
| 9/29/09 | KMS | 10.0 | $2,250.00 |
| 10/8/09 | JPC | 8.0 | $3,200.00 |
| 10/20/09 | KMS | 9.0 | $2,025.00 |
| 10/21/09 | KMS | 3.0 | $675.00 |
| 10/22/09 | KMS | 12.25 | $2,756.25 |
| 10/23/09 | KMS | 13.0 | $2,925.00 |
| 3/9/10 | EJH | 19.25 | $2,406.25 |
| 3/9/10 | KMS | 16.0 | $3,600.00 |
| 3/20/10 | TLM | 6.0 | $750.00 |
| 3/22/10 | EJH | 12.0 | $1,500.00 |
| 3/23/10 | EJH | 19.75 | $2,468.75 |
| **Total:** | | **162.50** | **$32,262.50** |

Itemized reductions made based on clerical or administrative work:

| Date | Biller | Reduction in Hours | Reduction in Fees |
|------|--------|--------------------|-------------------|
| 2/24/10 | PTJ | 0.5 | $62.50 |
| 3/2/10 | EJH | 1.25 | $156.25 |
| 3/20/10 | AHP | 1.5 | $187.50 |
| 3/21/10 | AHP | 1.5 | $187.50 |
| 3/23/10 | TLM | 1.5 | $187.50 |
| 3/24/10 | TLM | 1.5 | $187.50 |
| **Total:** | | **7.75** | **$968.75** |

Itemized reductions made based on motion in limine with regard to failure to adequately disclose witnesses for trial:

| Date | Biller | Reduction in Hours | Reduction in Fees |
|------|--------|--------------------|--------------------|
| 2/26/10 | REO | 3.5 | $787.50 |
| 3/1/10 | KMS | 10.5 | $2,362.50 |
| 3/1/10 | REO | 9.5 | $2,137.50 |
| 3/2/10 | REO | 7.75 | $1,743.75 |
| 3/5/10 | KMS | 6.0 | $1,350.00 |
| 3/6/10 | KMS | 11.25 | $2,531.25 |
| 3/7/10 | KMS | 11.75 | $2,643.75 |
| 3/8/10 | KMS | 10 | $2,250.00 |
| 3/10/10 | JPC | 3 | $1,200.00 |
| 3/11/10 | KMS | 4 | $900.00 |
| 3/12/10 | JPC | 10.5 | $4,200.00 |
| 3/12/10 | KMS | 13 | $2,925.00 |
| 3/16/10 | KMS | 1 | $225.00 |
| 3/17/10 | KMS | 1 | $225.00 |
| **Total:** | | **102.75** | **$25,481.25** |

Itemized reductions made based on inadequate documentation:

| Date | Biller | Reduction in Hours | Reduction in Fees |
|------|--------|--------------------|--------------------|
| 5/14/09 | KMS | 1.0 | $225.00 |
| 5/15/09 | KMS | .25 | $56.25 |
| 5/15/09 | KMS | 1.75 | $393.75 |
| 5/20/09 | KMS | .75 | $168.75 |
| 5/22/09 | KMS | .25 | $56.25 |
| 5/29/09 | KMS | 1.50 | $337.50 |
| 6/2/09 | KMS | 1.50 | $337.50 |
| 6/3/09 | KMS | 2.0 | $450.00 |
| 6/5/09 | KMS | 3.0 | $675.00 |
| 6/9/09 | KMS | 2.5 | $562.50 |
| 6/11/09 | KMS | .25 | $56.25 |
| 6/15/09 | KMS | 2.0 | $450.00 |
| 7/15/09 | KMS | 1.0 | $225.00 |
| 7/17/09 | KMS | 1.0 | $225.00 |
| 7/24/09 | KMS | 1.25 | $281.25 |
| 7/27/09 | KMS | 6.0 | $1,350.00 |
| 8/18/09 | KMS | .50 | $112.50 |
| 8/24/09 | KMS | .25 | $56.25 |
| 8/25/09 | KMS | 4.0 | $900.00 |
| 10/1/09 | KMS | 4.0 | $900.00 |
| 11/4/09 | KMS | 3.0 | $675.00 |
| 11/13/09 | KMS | 6.75 | $1,518.75 |
| 3/4/10 | KMS | 6.0 | $1,350.00 |
| 3/13/10 | KMS | .25 | $56.25 |
| 3/31/10 | KMS | 2.0 | $450.00 |
| **Total:** | | **52.75** | **$11,868.75** |